## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICHARD GRAY,

                Petitioner,           Case Number: 2:21-cv-11356

v.                                      HON. GERSHWIN A. DRAIN
                                      UNITED STATES DISTRICT JUDGE

ADAM DOUGLAS,[1]

                Respondent.

_____,

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

Petitioner Richard Gray filed a habeas corpus petition under 28 U.S.C. § 2254. He challenges his convictions for armed robbery, Mich. Comp. Laws § 750.529, and assault with intent to rob while armed, Mich. Comp. Laws § 750.89. He raises seven claims for habeas relief. For the reasons set forth below, the Court denies the petition. The Court also denies a certificate of appealability and grants Gray leave to proceed *in forma pauperis* on appeal.

---

[1] The proper respondent in a habeas case is the state officer having custody of the petitioner. *See* Rule 2, Rules Governing Section 2254 Cases. Gray is currently housed at the Saginaw County Correctional Facility. The warden of that facility is Adam Douglas. The Court orders the case caption amended to substitute Adam Douglas as the respondent.

## I. BACKGROUND

Gray's convictions stem from the robbery of his son and son's caretaker.  The

Michigan Court of Appeals provided this overview of the circumstances leading to

Gray's convictions:

> Gray's convictions arise from the armed robbery of his 43-year-old
> quadriplegic son, Erwin Sharpe, and the assault of Erwin's maternal
> aunt and caregiver, Latania Sharpe, in Erwin's Southfield home on the
> afternoon of July 2, 2016.  According to Latania's testimony, Gray
> entered the home unannounced and pointed a handgun at Latania and
> then Erwin, who was sitting in his motorized wheelchair.  Erwin asked
> Gray if he needed money and, following Erwin's instructions, Latania
> gave Gray approximately $180 from Erwin's left pocket.  While still
> pointing the gun, Gray directed Latania to remove a safe from Erwin's
> bedroom closet. Gray proceeded to pat down Erwin's pockets, and he
> took approximately $4,000 from Erwin's other pocket.   Latania
> removed the safe, but when she was unable to open it, Gray asked her
> if she "want[ed] to take a MF bullet?"  After Latania repeated that she
> was unable to open it, Gray took the safe and fled.  Video footage from
> Erwin's home security cameras depicted Gray with a handgun and
> later carrying the safe.  The defense denied that Gray committed a
> robbery or pointed the gun, contending that Latania's version of events
> lacked credibility and emphasizing that the video did not have audio.

*People v. Gray*, No. 342111, 2019 WL 6799694, at *1 (Mich. Ct. App. Dec. 12,

2019).

Gray was convicted by an Oakland County Circuit Court jury of armed

robbery and assault with intent to rob while armed.  On December 13, 2017, he was

sentenced to concurrent sentences of 27 to 60 years for each of his convictions.  *Id.*

at *1.

Gray filed an appeal of right in the Michigan Court of Appeals raising these claims: (i) violation of his right to counsel; (ii) violation of the right to due process by empaneling a jury referred to only by juror numbers and by failing to give cautionary instruction; and (iii) insufficient evidence was presented to establish that Gray assaulted Latania Sharpe with the intent to rob her.  Gray raised additional claims in a pro se supplemental brief:  (i) violation the 21-day rule by delaying preliminary examination; (ii) the denial of copies of transcripts and motions violated Gray's right to appeal, (iii) violation of *Faretta* rights; (iv) defense counsel was ineffective for failing to file a motion to suppress the video evidence; (v) defense counsel was ineffective for failing to impeach state witness; and (vi) appellate counsel was ineffective for failing to request an expert to evaluate video evidence.

The Michigan Court of Appeals affirmed Gray's convictions and remanded for the ministerial task of correcting the judgment of sentence, which incorrectly stated that Gray was convicted of two counts of armed robbery.  *Gray*, 2019 WL 6799694, at *5.  The Michigan Supreme Court denied Gray's application for leave to appeal.  *People v. Gray*, 505 Mich. 1134 (Mich. June 30, 2020).

Gray then filed this petition for a writ of habeas corpus.  These claims are before the Court:

I. Should Petitioner's convictions be dismissed because his preliminary examination was not held within 21 days after his arraignment?

3

II. Were Petitioner's due process rights violated by being denied a complete record of the proceedings below?

III. Was Petitioner denied due process and the right to a defense when the district court did not rule on a motion to dismiss?

IV. Was the district court wrong for not allowing Petitioner to represent himself at his preliminary examination, per *Faretta v. California*, 422 U.S. 806 (1975)?

V. Is Petitioner entitled to a new trial for the trial court's violation of his right to counsel, where there was a breakdown in the relationship with counsel, and the trial judge refused Petitioner's request for new counsel, without an adequate inquiry into the reasons for the breakdown?

VI. Was Petitioner denied the effective assistance of counsel at trial and on appeal?

VII. Did the trial court violate Petitioner's due process rights by empaneling a jury referred to only by juror numbers, and by failing to give a proper cautionary instruction?

Respondent filed an answer in opposition. (ECF No. 7.) Gray has filed a reply brief. (ECF No. 9.)

## II. LEGAL STANDARD

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims previously adjudicated by state courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).  The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).  Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.  DISCUSSION

### A.  Preliminary Examination

Gray's first claim concerns the timing of his preliminary examination.  He argues that the state court failed to hold his preliminary examination within 21 days after his arraignment in violation of Mich. Comp. Laws § 766.4(1).   Gray's

preliminary examination was originally scheduled for May 31, 2017, but was adjourned until June 14, 2017, because Gray was hospitalized. *Gray*, 2019 WL 6799694, at *3. The Michigan Court of Appeals found no error because "[a]n adjournment of the preliminary examination so that a hospitalized defendant can be present is an adjournment for good cause." *Id.*

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Because "federal habeas corpus relief does not lie for errors of state law" Gray's challenge to the timing of his preliminary examination does not warrant habeas corpus relief. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

## B.  Missing Transcripts

Next, Gray contends that he was denied his right to appeal because he was denied transcripts of a May 31, 2017 probable cause hearing, and of hearings on June 14 and 28, 2017. (*See* ECF No. 1, PageID.23.)

Due process requires that a defendant in a criminal case be provided with a transcript of a prior proceeding when that transcript is needed for an effective defense or appeal. *See, e.g., Britt v. North Carolina*, 404 U.S. 226, 227 (1971); *Griffin v. Illinois*, 351 U.S. 12, 19-20 (1956) (state violates equal protection if it fails to provide an indigent defendant with an available transcript for appeal).

The Supreme Court "has never held that the absence of a portion of a trial transcript automatically entitles the defendant to a retrial." *Jackson v. Renico*, 179 F. App'x 249, 252 (6th Cir. 2006). "[I]n order to demonstrate denial of a fair appeal, [a habeas] petitioner must show prejudice resulting from the missing transcript." This standard does not require absolute proof of prejudice, but the defendant "must present something more than gross speculation that the transcripts were requisite to a fair appeal." *Id*; *see also Jackson*, 179 Fed. Appx. at 252; *Scott v. Elo*, 302 F.3d 598, 604-05 (6th Cir. 2002).

The Michigan Court of Appeals denied Petitioner relief on this claim, stating:

> Gray next contends that the record is inadequate for appellate review because he was denied a complete record of the proceedings below. Specifically, Gray asserts that he was denied transcripts of a May 31, 2017 probable cause hearing, and hearings on June 14 and 28, 2017, all of which occurred before the preliminary examination. However, the district court register of actions indicates that the "pre-exam conference" scheduled for May 31, 2017, was adjourned because Gray was in the hospital. Likewise, the register of actions does not list any hearings on June 14 or June 28, 2017. Because no hearings were held on those dates, no transcripts are available, and Gray is not entitled to relief on this basis.

*Gray*, 2019 WL 6799694 at *4.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Gray has not shown that the state court's decision that no hearing occurred on May 31, 2017 or June 14, 2017,

7

was erroneous.  The Michigan Court of Appeals appears to have incorrectly stated that no hearing was held on June 28, 2017.  Gray's preliminary examination was held on that date.  The transcript was clearly provided to the defense because the transcript is cited in the defense's appellate brief.  (*See* ECF No. 8-7, PageID.748, 750.)  It appears that Gray believes an additional portion of the transcript or an additional transcript exists but was not produced based on docket entries indicating Gray's motion for dismissal and for substitute counsel were denied for the reasons stated on the record.  (*See id.* at PageID.868-89.)  The preliminary examination transcript includes argument and ruling on Gray's motion.  (*See id.* at PageID.308-311.)  So Gray fails to establish that he was denied a transcript of any proceeding held on June 28, 2017.

Moreover, to the extent that a portion of the preliminary examination transcript is missing, Gray has not shown, nor is there any indication in the record, that any missing portion of the record was necessary for Gray to appeal his convictions.  Mere speculation is insufficient to establish a constitutional violation. *See Bransford*, 806 F.2d at 86.  Habeas relief is not warranted on this claim.

## C.  State Court Delay in Deciding Motion to Dismiss

Gray next seeks relief on the ground that the trial court failed to decide his pretrial motion to dismiss.[2]   The motion was based on a delay between the arraignment and preliminary examination.  But, as discussed *supra*, the state court correctly found no unfair delay in holding Gray's preliminary examination.  Therefore, there was no harm to Gray as he fails to show any basis on which the trial court could have dismissed the charges.

## D.  Right to Self-Representation

Gray claims his right to self-representation was violated by the trial court's denial of his request to represent himself during the preliminary examination.

The Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel in his defense.   U.S. Const. amend. VI.   In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court interpreted this right to counsel as encompassing "an independent constitutional right" of a defendant to represent himself at trial when the defendant "voluntarily and intelligently elects to do so." *Id.* at 807.

---

[2] **Error! Main Document Only.**A prisoner is required to exhaust his state-court remedies for a claim before presenting that claim in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A).  Respondent argues that Gray failed to raise this claim in state court.  The Court nevertheless addresses the merits of this claim because the Court may decide an unexhausted claim where the unexhausted claim is plainly meritless. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).

The Sixth Amendment's right to counsel guarantee refers to the "assistance" of counsel. "The language and spirit of the Sixth Amendment contemplate that counsel . . . shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally." *Id.* at 820. Where a defendant chooses to accept a lawyer's representation, counsel is allocated a certain amount of power to make binding decisions of trial strategy. *Id.* But "[t]his allocation can only be justified ... by the defendant's consent, at the outset, to accept counsel as his representative." *Id.* at 820-21. Unless a defendant acquiesces to representation by counsel, "the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense." *Id.* at 821.

To invoke the right to self-representation, a defendant first must assert his self-representation right "in a timely manner." *Martinez v. Ct. of App. Of Cal., Fourth App. Dist.,* 528 U.S. 152, 162 (2000). Second, the defendant must "knowingly and intelligently" waive the right to counsel after being advised of "the dangers and disadvantages of self-representation." *Faretta,* 422 U.S. at 835. Finally, a defendant's request for self-representation must be made "clearly and unequivocally." *Id.*, 422 U.S. at 835; *see also United States v. Martin*, 25 F.3d 293, 295 (6th Cir.1994) ("To assert the right of self-representation, a defendant must do so unequivocally.").

The Michigan Court of Appeals, applying *Faretta*, rejected this claim:

> Here, before the preliminary examination, Gray requested the court appoint him a new lawyer.  The court denied the request, but offered to allow Gray to represent himself with his lawyer acting as standby counsel.  Gray then sought to adjourn the examination so that he could "prepare."  The court denied that motion after ascertaining that the prosecution was ready to proceed and the witnesses were waiting to testify.  Gray responded by telling the court that he "would rather be in the bullpen," and he stated, unequivocally, that he was choosing "not to participate–period." Consequently, the record in this case does not support a finding that Gray unequivocally sought to represent himself and was denied that right.  He instead unequivocally proclaimed that he was not going to participate. Further, during later proceedings in the case, he did not make any requests to represent himself.  The trial court did not violate Gray's right of self-representation.

Gray, 2019 WL 6799694, at *4.

Gray is not entitled to relief on his claim because the Michigan Court of Appeals did not err in its application of Federal law.  The state court's decision that Gray did not clearly and unequivocally ask to represent himself is supported by the record.  In fact, he made it clear that he did not want his current lawyer and, also, did not want to represent himself.   The Michigan Court of Appeals did not unreasonably apply Federal law or reach an unreasonable decision in light of the facts. Relief is denied on this claim.

**E.  Right to Counsel**

In his fifth claim, Gray argues that the trial court's failure to inquire into the apparent breakdown in the attorney-client relationship violated his Sixth Amendment rights.

There is no clearly established Supreme Court precedent requiring a trial court to inquire into the basis for a defendant's dissatisfaction when a defendant requests new counsel.  *Akins v. Easterling*, 648 F.3d 380,  397 (6th Cir. 2011) (citing *Morris v. Slappy*, 461 U.S. 1, 14 (1983)).  Thus, a state trial judge's failure to inquire into a habeas petitioner's complaints against counsel before denying a motion for substitution of counsel does not, by itself, entitle the petitioner to habeas relief.  *See James v. Brigano*, 470 F.3d 636, 643 (6th Cir.2006) (reversing a grant of relief because the inquiry requirement was not clearly established Federal law).  Gray may only succeed on this substitution of counsel claim by showing "that the refusal to appoint new counsel resulted in a denial of effective assistance of counsel ..." *Peterson v. Smith*, 510 F. App'x 356, 366-67 (6th Cir. 2013).  As discussed below, Gray fails to establish constitutionally ineffective assistance of defense counsel, so he is unable to establish that he was prejudiced by the trial court's failure to appoint substitute counsel.

### F.  Ineffective Assistance of Trial and Appellate Counsel

In his sixth claim, Gray argues that he received ineffective assistance of trial and appellate counsel.  Gray claims that trial counsel rendered ineffective assistance by failing to challenge the authenticity of the surveillance video and failing to effectively cross-examine Latania Sharpe.  He also alleges his appellate attorneys

12

were ineffective for failing to retain an expert witness to evaluate the surveillance video.[3]

The Sixth Amendment right to counsel guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Id.* at 687-88. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

The *Strickland* standard is a difficult one to satisfy because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

---

[3] The trial court appointed substitute appellate counsel after granting the first assigned appellate attorney's motion to withdraw.

13

On appeal, "counsel has no obligation to raise every possible claim." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004). "[T]he decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment" and "[c]ounsel's performance is strongly presumed to be effective." *Id*. (quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)).

First, Gray argues that defense counsel was ineffective for failing to challenge the authenticity of the surveillance video. The Michigan Court of Appeals held that Latania Sharpe's testimony properly authenticated the video in accordance with Michigan Rule of Evidence 901(a). *Gray*, 2019 WL 6799694, at *5.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). The Court must defer to the Michigan Court of Appeals' determination that the surveillance video was admissible under Michigan law. *See Brooks v. Anderson*, 292 F. App'x 431, 437-38 (6th Cir. 2008). Counsel was not ineffective for failing to advance a meritless objection. *See Sutton v. Bell,* 645 F.3d 752, 755–56 (6th Cir. 2011) (trial counsel is not ineffective for failing to raise a meritless objection).

Next, Gray argues that counsel was ineffective for failing to impeach Latania Sharpe with her inconsistent prior statements about the surveillance video.

14

Specifically, he claims that Latania failed to accurately explain at trial how the surveillance video was obtained. The Michigan Court of Appeals found no merit to this claim:

> Gray's lawyer vigorously cross-examined Latania, resulting in testimony that her description of the events was inconsistent with the surveillance video and that she had memory issues, including forgetfulness. Also, during cross-examination, Gray's lawyer elicited from Latania that she was aware of the home security system since 2015, and highlighted her direct examination testimony that Gray had previously lived in Erwin's house for eight months. On appeal, Gray does not identify additional inconsistencies or otherwise explain how his lawyer could have further undermined Latania's credibility, particularly in light of the evidence presented at trial. Thus, the record simply does not show that Gray's lawyer's impeachment efforts were objectively unreasonable or prejudicial.

Gray, 2019 WL 6799694, at *5.

A review of the record shows that defense counsel vigorously cross-examined Latania Sharpe and explored inconsistencies in her testimony. The Court finds that the Michigan Court of Appeals' conclusion that trial counsel's performance in this regard was not contrary to or an unreasonable application of Supreme Court precedent.

Finally, Gray argues that his appellate attorneys were ineffective for failing to hire an expert to analyze the surveillance video. He claims the expert could have determined what may have been erased from the video. The Michigan Court of Appeals held that because Gray failed to present any evidence to show that an expert would have provided testimony favorable to the defense, he failed to establish

counsel was ineffective for failing to consult an expert. *Id.* Gray fails to show this decision was contrary to, or an unreasonable application of, Federal law. A habeas petitioner's claim that trial counsel was ineffective for failing to consult or call an expert witness cannot be based on speculation. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Gray fails to show that appellate counsel should have retained an expert or that the expert would have provided beneficial information. In the absence of such proof, Gray is unable to establish that he was prejudiced by counsel's failure to consult or call an expert witness. *Id.* at 557 (rejecting petitioner's ineffective-assistance claim arising from counsel's failure to call a particular witness because the petitioner "offered no evidence, beyond his assertions, to prove what the content of [the witness's] testimony would have been"). *See also Burt v. Titlow*, 571 U.S. 12, 23 (2013) ("It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'") (quoting *Strickland*, 466 U.S. at 689).

Gray's ineffective assistance of counsel claims will be denied.

**G.  Anonymous Jury Claim**

Gray next argues that the trial court violation his right to due process by empaneling an anonymous jury where during voir dire and trial the prospective and

empaneled jurors were generally referred to by number, not name.[4]

The Michigan Court of Appeals rejected this claim:

A trial court's practice of referring to jurors by numbers instead of names potentially involves the use of an "anonymous jury," which this Court has defined as "one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v. Williams*, 241 Mich. App. 519, 522; 616 N.W.2d 710 (2000). The use of an anonymous jury implicates two interests: "(1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence." *Id.* at 522-523. An anonymous jury is "where something more than just the jurors' names is withheld from the parties" and is only actually implicated if "certain biographical information" is also withheld. *People v. Hanks*, 276 Mich. App. 91, 93; 740 N.W.2d 530 (2007). Ultimately, "[a] challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Id*.

In this case, the trial court informed the parties of its practice of referring to jurors by number rather than name, and requested that the parties adhere to this procedure. Yet, the record suggests that the jurors and prospective jurors' names were, in fact, available to the parties. For example, during voir dire, the trial court used a prospective juror's name on the record—apparently to get the prospective juror's attention—and the court instructed the court clerk to look at the individual's name. Moreover, even if the names were unavailable to the defense, it is apparent that the jurors and prospective jurors' biographical information was not withheld from the defense. During

---

[4]  Respondent argues that this claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

voir dire, the prospective jurors shared biographical information, including their employment status, marital status, spouses' employment status, education level, whether they had children, and the ages of their children. Further, there is nothing in the record to indicate that the use of numbers undermined the presumption of innocence. And although the trial court did not provide a specific instruction regarding the use of numbers to identify jurors on the record, the court twice instructed the jury that Gray was presumed innocent. Accordingly, Gray has not established that a plain error occurred.

Gray, 2019 WL 6799694, at *2.

The "decision to empanel an anonymous jury 'is within the sound discretion of the trial court.'" *United States v. Lawson*, 535 F.3d 434, 440–41 (6th Cir. 2008) (quoting *United States v. Talley*, 164 F.3d 989, 1001 (6th Cir. 1999)). "Under AEDPA, if there is *no* clearly established Federal law, as determined by the Supreme Court that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 454 (6th Cir.2005) (emphasis in original) (internal quotation marks omitted). While the Sixth Circuit has held that the empaneling of an anonymous jury should be limited to certain circumstances where there is "strong reason to believe the jury needs protection" and the court should take "reasonable precautions to minimize any prejudicial effects," *United States v. Talley*, 164 F.3d 434, 439 (6th Cir. 2008), the Supreme Court has never held that there is a constitutional right to a public jury. *See United States v. Lawson*, 535 F.3d 434, 440 (6th Cir. 2008) ("The Sixth Amendment provides defendants with a right to a public *trial* by an impartial jury, but it does not guarantee a right to a public *jury*.")

18

(emphasis in original). Consequently, Petitioner cannot show that the state court's denial of his claim was either contrary to or an unreasonable application of clearly established Supreme Court precedent. *Wright v. Van Patten*, 552, U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented..., it cannot be said that the state court unreasonably applied clearly established Federal law.") (internal quotations and citations omitted).

## IV.   CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## IV.  CONCLUSION

Accordingly, the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.** The Court finds Petitioner may proceed on appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED**.

Dated:  October 5, 2023                    /s/ Gershwin A. Drain
                                           GERSHWIN A. DRAIN
                                           U.S. DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 5, 2023, by electronic and/or ordinary mail.
/s/ Kelly Winslow for Teresa McGovern
Case Manager